IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO

UNITED STATES OF AMERICA,

    Plaintiff,

v.

                                                Case No. 1:22-cr-00896-MLG-3

ERMINIO GUILLERMO GONZALEZ,

    Defendant.

## MEMORANDUM OPINION AND ORDER ON ARMED CAREER CRIMINAL SENTENCING OBJECTIONS

In the summer of 2024, a jury convicted Erminio Gonzalez of being a felon in possession of a firearm and ammunition, contrary to 18 U.S.C. § 922(g)(1), and possessing fentanyl, in violation of 21 U.S.C. § 844. Doc. 322 at 1, 4. These are not Gonzalez's first convictions; his criminal history is extensive. Relevant here are two prior convictions for robbery, Doc. 305-5, and another for trafficking a controlled substance, Doc. 305-10. The Government asserts that these prior crimes constitute "violent crimes" or "serious drug offenses" and that Gonzalez is therefore subject to the provisions of the Armed Career Criminal Act (ACCA), 18 U.S.C. § 924(e).[1] Doc. 304 at 3-4. Although Probation did not initially conclude ACCA applied, it revised the Presentence Investigation Report (PSR) after reviewing the Government's position and included a mandatory fifteen-year minimum sentence as part of Gonzalez's sentencing provisions. Doc. 321 at 1; Doc. 322 at 9 ¶ 41. Gonzalez objects and argues his prior convictions are not predicate felonies under ACCA. *See generally* Doc. 329. The United States disagrees and asks that Gonzalez's sentence

---

[1] The United States also objects and argues for a separate offense level enhancement. Doc. 304 at 1-3. Gonzalez objects to the descriptions of his offense conduct, calculation of his criminal history, and the application of an offense level enhancement. *See generally* Doc. 305. The Court will address these objections in a separate Memorandum Order and Opinion.

1

incorporate a fifteen-year minimum term of imprisonment. *See* Doc. 348 at 7:24-8:8. For the reasons explained below, the Court sustains Gonzalez's objection.

## BACKGROUND

**I.     Relevant State Criminal Convictions**

In 2004, Gonzalez was indicted in state court for two separate purse snatchings in violation of New Mexico's robbery statute, NMSA 1978, § 30-16-2 (1973). Doc. 305-1 at 1 (grand jury indictment for CR 2004-01043); Doc. 305-3 at 1 (grand jury indictment for CR 2004-04417). Gonzalez pled guilty to both charges in a single, consolidated plea agreement.[2] *See* Doc. 305-2 (order of consolidation); Doc. 305-4 (2005 plea agreement). Gonzalez could have abated two years of time in state prison had he successfully completed Drug Court, but that did not happen. *See* Doc. 305-4 at 1-2 ("Defendant to be referred to Drug Cou[r]t and Sentencing shall be reserved until [its] completion . . . If the Defendant fails Drug Court, there will be a two (2) year cap of incarceration at sentencing[.]"). He failed that diversion program and, in 2005, was ultimately sentenced to an actual term of two years' imprisonment and four years of probation.[3] Doc. 305-5 at 2.

Gonzalez was back in state court in 2009 after he pled guilty to trafficking a controlled substance in violation of NMSA 1978, § 30-31-20 (2006).[4] *See generally* Doc. 305-8 (Repeat

---

[2] Gonzalez also pled guilty to a third, separate crime, *see* Doc. 305-4 at 1, which is not relevant in determining his ACCA eligibility.

[3] To arrive at this sentence, the state district court had imposed three years of imprisonment for each robbery, with the terms to run consecutively (in total, a six-year sentence), but suspended four years of incarceration which resulted in his two-year term of imprisonment. Doc. 305-5 at 2.

[4] Gonzalez was simultaneously convicted of possession of a controlled substance. *See* Doc. 305-10 at 2-3 (violating NMSA 1978, § 30-31-23 (2005)). These drug convictions were consolidated with a probation violation from a prior case for purposes of the plea agreement. *See* Doc. 305-9 at 1; Doc. 305-8 at 1, 2 (plea agreement for probation violation); *see generally* Doc. 305-7 (filed on

Offender Plea and Disposition Agreement for CR 2007-00099, CR 2009-02147, and CR 2009-02985); Doc. 305-10 at 2-3. According to the plea agreement, the maximum penalty for that charge (a second-degree felony) was a "basic sentence of nine years." Doc. 305-8 at 2. The plea agreement included the possibility that Gonzalez would face additional penalties as a habitual offender, though that outcome appeared to be contingent on subsequent legal violations or failing to disclose prior convictions. *See id.* at 3 (providing that "[t]he State may bring habitual offender proceedings, as provided by law, based on any convictions not admitted in this plea," and outlining how Gonzalez would "be subject to habitual offender proceedings based on the convictions listed" in his plea agreement). Ultimately, Gonzalez was sentenced to a nine-year suspended sentence with an actual four-year term of incarceration followed by five years of probation. Doc. 305-10 at 3-4.

Gonzalez was not on probation very long before facing new criminal charges. In the summer of 2013, Gonzalez was arrested for vehicular homicide.[5] Doc. 322 at 18-19 ¶ 55. As a result, his probation was revoked and the state district court imposed "a four year [sic] habitual offender enhancement on count one of the indictment [in the 2009 drug trafficking charges]." Doc. 305-11 at 2. Gonzalez was sent to the New Mexico Department of Corrections to serve out that sentence. *Id.* (imposing the balance of 1,460 days in CR 2009-02985). He was released on parole in May of 2018 and completed that parole term in April of 2020. Doc. 322 at 18 ¶ 55.

## II.  Federal Prosecution and Jury Trial

In April of 2022, Federal Bureau of Investigations (FBI) agents searched the residences of Shamon Pacheco Jr. and Orlando Diaz, Gonzalez's codefendants, based on suspicions of high

---

July 6, 2009). He was sentenced to serve 308 days in custody (concurrent with CR 2009-02985 and CR 2009-02147) for that revocation. Doc. 305-7 at 2.

[5] Gonzalez was ultimately convicted by a jury of Homicide by Vehicle. Doc. 322 at 18-19 ¶ 55.

3

levels of fentanyl trafficking. Doc. 1 at 2-3; Doc. 322 at 4 ¶ 8, 5 ¶ 9; *see* Doc. 2. Evidence collected during those searches implicated Gonzalez. *See* Doc. 322 at 5 ¶ 13. Agents followed that lead and executed a search warrant at his residence. *Id.* at 5-6 ¶¶ 14-16. During that search, agents found a firearm, ammunition, and blue tablets presumed to be fentanyl. *Id.* at 5-7 ¶¶ 15-19. Gonzalez was subsequently arrested. Doc. 1 at 2-3; *see* Doc. 2. He was charged with four counts: (1) conspiracy to traffic a controlled substance (namely, fentanyl); (2) possession of a firearm in furtherance of the drug trafficking; (3) being a felon in possession of a firearm, and (4) possession of fentanyl. Doc. 232 at 1-3. A jury convicted Gonzalez of the latter two counts; he was acquitted on the other charges. Doc. 288 at 1 (jury verdict); Doc. 322 at 1.

### III.  Sentencing Preparation and Objections to the PSR

Following trial, Probation prepared Gonzalez's PSR. Initially, Probation concluded that while Gonzalez may have qualified as an armed career criminal, ACCA did not apply. Doc. 300 at 26-27. It reasoned the enhancement was inapplicable because Gonzalez did not admit to having three prior ACCA predicate convictions and "a Jury did not find a similar conclusion." *Id.* at 27. That conclusion, however, did not account for a stipulation the parties entered before trial memorializing the parties' agreement that Gonzalez's prior robbery and drug trafficking convictions were committed on separate occasions and Gonzalez would not argue otherwise to the jury. Doc. 250 at 1 (documenting a *Wooden v. United States*, 595 U.S. 360, 370 (2022), waiver and stipulation). The stipulation made no mention of Gonzalez's ACCA eligibility, so either party could argue that issue at sentencing. *Id.*

The Government objected to the PSR, recounted the parties' stipulation, and argued that Gonzalez's prior state convictions constituted ACCA predicate offenses. Doc. 304 at 4. Probation accepted those objections and issued an addendum to the PSR. Doc. 320 at 10 (stating Gonzalez

4

"meets the qualifications as an armed career criminal and [is] subject to an enhanced sentence under the provisions of 18 U.S.C. § 924(e)"). The amended PSR included a corresponding fifteen-year mandatory minimum sentence. Doc. 322 at 9 ¶ 41, 24 ¶¶ 88, 89. Gonzalez disagrees. He argues his conviction for trafficking a controlled substance in 2009 does not qualify as a "serious drug offense" under Section 924(e). Doc. 329 at 1-5. He also maintains that his 2005 state robbery convictions are not "crimes of violence" because (in his view) United States Supreme Court and Tenth Circuit decisional authority have developed in his favor. *Id.* at 5-10.

The Court held a hearing on these objections. *See* Doc. 347 (Clerk's Minutes); Doc. 348 (Hearing Transcript). The Government presented the testimony of Probation Officer Jon-Paul Barabe who explained the bases for his conclusion that Gonzalez qualified as a career criminal under ACCA. *See* Doc. 348 at 10-29. Both sides also presented argument. At the conclusion of the hearing, the Court took the matter under advisement. *Id.* at 51:10-12.

## DISCUSSION

The Court must be certain that a past offense qualifies as an ACCA eligible conviction before applying the statute's heavy penalty. *See United States v. Titties*, 852 F.3d 1257, 1264-65, 1268 (10th Cir. 2017) (articulating the legal requirement for certainty in applying ACCA). The Government has the burden to meet that standard. *Id.* at 1264-65. Accordingly, the Court examines whether the Government has shown with certainty that Gonzalez's prior convictions qualify as ACCA predicate felonies.

I.      **Gonzalez's 2009 Drug Trafficking Conviction**

Per ACCA, a "serious drug offense" includes "an offense under State law, involving manufacturing, distributing, or possessing with intent to manufacture or distribute, a controlled substance . . . for which a maximum term of imprisonment of ten years or more is prescribed by

5

law[.]" § 924(e)(2)(A)(ii). The United States argues Gonzalez's 2009 conviction for New Mexico state drug trafficking fits this definition because he faced a basic sentence of nine years plus an additional four-year enhancement per the New Mexico Criminal Sentencing Act, NMSA 1978, § 31-18-15 (2007) (providing the basic sentence for a second degree felony), § 31-18-17(B) (2003) (outlining habitual offender enhancements). Doc. 313 at 2; *see* Doc. 320 at 10 (Probation positing the conviction "was enhanced by a four-year Habitual Enhancement at sentencing"). But under New Mexico law that enhanced penalty is not automatically applied. A state district attorney must "file an information charging that person as a habitual offender" if it appears the enhancement is warranted before a judge can impose a habitual offender enhancement. NMSA 1978, § 31-18-19 (1953); *State v. Frawley*, 2007-NMSC-057, ¶ 22, 143 N.M. 7, 172 P.3d 144 ("[I]t is the *State's* discretion, rather than the judge's, that must be exercised before a sentence may be aggravated.").[6]

That did not happen here. The relevant charging document in Gonzalez's state drug trafficking case expressly identifies his exposure as "a basic sentence of nine years, but not less than six years, nor more than twelve years imprisonment, and not more than $10,000 fine, followed by two years of parole." Doc. 329-1 at 3 ("Information"). The Information is silent regarding a potential habitual offender enhancement, and the Court deems that omission dispositive. Since the state prosecutor did not charge Gonzalez as a habitual offender, the state district court judge could not have imposed an enhanced sentence. *United States v. Romero-León*, 622 F. App'x 712, 718

---

[6] Other New Mexico case law confirms this interpretation. *See, e.g.*, *Caristo v. Sullivan*, 1991-NMSC-088, ¶ 42, 112 N.M. 623, 818 P.2d 401 ("[E]ssential fairness requires that there be some pleading filed by the state . . . before an increased penalty can be imposed." (citation modified)); *State v. Trujillo*, 2007-NMSC-017, ¶ 10, 141 N.M. 451, 157 P.3d 16 ("If the State exercises its discretion and seeks such an enhancement during the appropriate time frame, the trial court is obligated to impose the enhancement once the defendant is proven to be a habitual offender.").

(10th Cir. 2015) (concluding the defendant's drug crimes did not trigger ACCA because the New Mexico prosecutor did not file the requisite pleadings to enhance his state sentence).

The other materials submitted during these proceedings do not require a different conclusion. For example, while the plea agreement references habitual offender proceedings, the corresponding Information lacks a habitual offender charge. *Compare* Doc. 305-8 at 1-2 (plea agreement signed June 18, 2009, but filed July 6, 2009), *with* Doc. 329-1 (Information filed on June 22, 2009); *see* Doc. 348 at 15:2-24 (Barabe referencing the attendant language in the agreement). Instead, the plea agreement conditioned habitual offender proceedings on whether Gonzalez were to commit a new violation of law after completing the sentence for his 2009 convictions.[7] Doc. 305-8 at 3.

As to the Judgment, Sentence, and Commitment ("J&S"), the state court judge circled the enhancement code for the habitual offender enhancement ("HO") and sentenced Gonzalez to a term of four years' imprisonment to be served "in the Department of Corrections pursuant to the Habitual Offender Sentence[.]" Doc. 305-10 at 2, 3 (imposing a total sentence of nine years); *see* Doc. 348 at 11:21-25 (Barabe testifying to the same and his interpretation of the document), 49:3-16 (the United States reiterating its arguments). But the judge did not impose a sentence that would suggest application of the habitual offender enhancement and, as Gonzalez points out, whatever

---

[7] Years later, the State pursued the plea agreement provisions concerning habitual offender proceedings, Doc. 305-8 at 3, when Gonzalez committed a new crime. *See* Doc. 305-11 at 2 (2013 Order Revoking Probation); *see also* Doc. 347-1 at 2, 5 (two different Supplemental Informations—one filed on July 6, 2009, and another filed on May 29, 2013— charging Gonzalez under Section 31-18-17(B)).

markings were made on the J&S do not "supplant the prosecution's discretion in how he was charged." Doc. 329 at 4.

Given the foregoing, the Court concludes the Government has not met its burden to show with certainty that Gonzalez faced a possible sentence of more than ten years' incarceration when convicted in 2009. *United States v. Brooks*, 751 F.3d 1204, 1208 (10th Cir. 2014) ("[A] recidivist finding [can] set the 'maximum term of imprisonment,' but only when the finding is a part of the record of conviction." (quoting *Carachuri-Rosendo v. Holder*, 560 U.S. 563, 577 n.12 (2010))); *id.* at 1213 (requiring courts consider "the maximum amount of prison time a *particular* defendant could have received"). Consequently, the Court will not treat Gonzalez's state drug trafficking conviction as an ACCA predicate felony. *See United States v. Degeare*, 884 F.3d 1241, 1248 (10th Cir. 2018) ("[I]n the absence of such certainty, [the Court] can[not] treat an offender's prior convictions as an ACCA predicate."); *United States v. Rodriquez*, 553 U.S. 377, 389 (2008) ("[I]in those cases in which the records that may properly be consulted do not show that the defendant faced the possibility of a recidivist enhancement, it may well be that the Government will be precluded from establishing that a conviction was for a qualifying offense."); *cf. United States v. Davis*, 137 F.4th 1140, 1147 (10th Cir. 2025) (concluding the defendant was not subject to an aggravated state sentence because of a lacking record of conviction). The Court sustains Gonzalez's objection. Doc. 329 at 1-5.

## II.  Gonzalez's 2005 Robbery Convictions[8]

ACCA defines a "violent felony" to include "any crime punishable by imprisonment for a term exceeding one year" that "has as an element the use, attempted use, or threatened use of

---

[8] Even though the Court concludes that Gonzalez's 2009 drug conviction does not qualify as an ACCA predicate—meaning ACCA is therefore inapplicable—the Court briefly addresses Gonzalez's arguments concerning his robbery convictions.

8

physical force against the person of another[.]" 18 U.S.C § 924(e)(2)(B)(i). The Government asserts that both of Gonzalez's robbery convictions fit that definition. Doc. 313 at 2; *see* Doc. 305-4 at 1 (case numbers CR-2004-01043 and CR-2004-04417). Gonzalez responds that under recent state and federal case law his "simple robbery" convictions are not "violent felonies" because New Mexico's definition of robbery no longer satisfies ACCA's "elements clause."[9] Doc. 329 at 6. Controlling authority does not support Gonzalez's position.

In *United States v. Garcia*, the Tenth Circuit held that New Mexico robbery is a violent crime under ACCA. 877 F.3d 944, 956 (10th Cir. 2017). *Garcia*'s holding on that point has not been reversed, and the Tenth Circuit subsequently applied its holding to conclude that armed robbery under Section 30-16-2 is also a violent felony under ACCA. *United States v. Manzanares*, 956 F.3d 1220, 1226 (10th Cir. 2020) ("[B]ecause there has been no intervening change in state law, we are bound by *Garcia*'s interpretation of New Mexico's robbery statute.").

Until that interpretation changes, the Court holds (as it must) that robbery, as defined by Section 30-16-2, is still an ACCA "violent felony." *See e.g.*, *United States v. Spedalieri*, 910 F.2d 707, 709 (10th Cir. 1990) (emphasizing that a district court is bound to follow Tenth Circuit precedent). The Tenth Circuit's view of New Mexico law compels the conclusion that Gonzalez's two simple robbery convictions are predicate felonies under ACCA. *See United States v. Velasquez*, 810 F. App'x 655, 658 (10th Cir. 2020) ("[O]ur interpretation of New Mexico's robbery statute is

---

[9] In New Mexico, "[r]obbery consists of the theft of anything of value from the person of another or from the immediate control of another, by use or threatened use of force or violence." § 30-16-2. This third-degree felony is also known as "simple robbery" if the defendant was not armed during commission of the offense. *See State v. Lorenzo*, 2024-NMSC-003, ¶ 25, 545 P.3d 1156 (noting that "the use of a deadly weapon" separates "simple robbery" from "armed robbery" under the statute).

9

controlled by *Garcia*[.]"). Thus, the Court overrules Gonzalez's objections on this issue and sustains the Government's related objections. Doc. 329 at 5-9; Doc. 304 at 3-4.

## CONCLUSION

For the reasons explained above, the Court sustains Gonzalez's objection as to his 2009 drug trafficking conviction. Doc. 329 at 1-5. The Court also sustains the Government's objection concerning Gonzalez's robbery convictions and overrules Gonzalez's objections. Doc. 304 at 3-4; Doc. 329 at 5-10. The result is that the mandatory fifteen-year minimum sentence associated with ACCA will not be applied in determining Gonzalez's sentence. *See* 18 U.S.C. § 924(e). The PSR, Doc. 322, shall be amended accordingly.

It is so ordered.

_____
UNITED STATES DISTRICT JUDGE
MATTHEW L. GARCIA