**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF NEW MEXICO**

---

UNITED STATES OF AMERICA,

Plaintiff,

v. Case No. 1:22-cr-00896-MLG-3

ERMINIO GUILLERMO GONZALEZ,

Defendant.

**MEMORANDUM OPINION AND ORDER DENYING DEFENDANT ERMINO GONZALEZ'S MOTION TO RECONSIDER ACCA DETERMINATION**

The issue of whether the Defendant Erminio Gonzalez is subject to the sentencing provisions of the Armed Career Criminal Act ("ACCA")[1] is before the Court for a fourth time with Gonzalez's Motion to Reconsider ACCA Determination ("Motion to Reconsider"), Doc. 392. *See generally* Doc. 304; Doc. 329; Doc. 367; Doc. 392. On December 3, 2025, the Court concluded that the ACCA applies to Gonzalez's sentence. Doc. 383. Six months later, Gonzalez requests the Court to revisit its previous ruling. *See* Doc. 392. For the reasons explained below, the Court denies Gonzalez's Motion to Reconsider.

## BACKGROUND

### I. Relevant Factual Background[2]

---

[1] The ACCA "establishes a minimum fifteen year [sic] sentence for anyone convicted under 18 U.S.C. § 922(g) who also has three separate convictions for a 'violent felony' or a 'serious drug offense.'" *United States v. Villanueva*, 821 F.3d 1226, 1239 (10th Cir. 2016) (quoting 18 U.S.C. § 924(e)). A "serious drug offense" pursuant to the ACCA includes "an offense under State law, involving manufacturing, distributing, or possessing with intent to manufacture or distribute, a controlled substance . . . for which a maximum term of imprisonment of ten years or more is prescribed by law." 18 U.S.C. § 924(e)(2)(A).

[2] The Court incorporates by reference its discussion of Gonzalez's numerous convictions from its December 3, 2025, Memorandum Opinion and Order. Doc. 383 at 2-5.

Gonzalez pled guilty to the charge of trafficking a controlled substance in violation of NMSA 1978, § 30-31-20 (2006) ("2009 Trafficking Conviction") on June 18, 2009. Doc. 305-8 at 1; *see generally* Doc. 347-1 ("2009 Supplemental Information"). He was ultimately sentenced to a nine-year suspended sentence with an actual four-year term of incarceration followed by five years of probation. Doc. 305-10 at 3-4. After being released from custody but while still on probation for the 2009 charges, Gonzalez was arrested for reckless homicide by vehicle. Doc. 385 at 16-18 ¶¶ 53-55. On May 28, 2013, a state prosecutor filed a supplemental information in the case for the 2009 Trafficking Conviction. Doc. 347-1 at 4 ("2013 Supplemental Information"). This new charging document, which identifies the case number for the 2009 Trafficking Conviction, was filed in open court. *Id.* It provides that "[D]efendant's sentence [for the 2009 Trafficking Conviction] shall be enhanced pursuant to Section 31-18-17(B), NMSA 1978, as amended, a four year [sic] enhancement." *Id.* at 4-5. In accordance with this language, the Second Judicial District Court revoked Gonzalez's probation and imposed "a four year [sic] habitual offender enhancement on count one of the indictment [in the 2009 trafficking case.]" Doc. 305-11 at 2. Gonzalez served this sentence and was released on parole in May of 2018. Doc. 385 at 18-19 ¶ 55.

## II. Application of the ACCA to Gonzalez's Federal Conviction

In 2024, a jury convicted Gonzalez of being a felon in possession of a firearm and ammunition and possessing fentanyl in violation of 18 U.S.C. § 922(g)(1) and 21 U.S.C. § 844, respectively. Doc. 385 at 1-2, 4 ¶ 3. When Probation initially prepared the relevant Presentence Investigation Report ("PSR"), it concluded that the ACCA did not apply. Doc. 300 at 26-27. The United States objected. It asserted that Gonzalez's prior state convictions met the statutory prerequisites necessitating the ACCA's application. Doc. 304 at 4. Probation ultimately agreed and

issued an addendum to the PSR adopting the Government's position. Doc. 320 at 10. The amended PSR included a corresponding fifteen–year mandatory minimum sentence. Doc. 322 at 9 ¶ 41, 24 ¶¶ 88- 89. Gonzalez next objected to the amended PSR on two separate grounds. First, he asserted that the 2009 Trafficking Conviction does not qualify as a "serious drug offense" under 18 U.S.C. § 924(e). Doc. 329 at 1-5. He further argued that his prior state robbery convictions do not constitute "crimes of violence" for purposes of ACCA.[3] *Id.* at 5-9.

On April 8, 2025, the Court held a hearing on Gonzalez's objections. *See* Doc. 347 ("Clerk's Minutes"); Doc. 348 ("Hearing Transcript"). Probation Officer Jon-Paul Barabe testified during that proceeding. It was during his testimony that a supplemental information filed in 2009 and the 2013 Supplemental Information were first addressed. *Id.* at 23:3-26:20, 29:3-31:2; Doc. 347-1. The Court had not previously been aware of those filings. *See* Docs. 304, 305, 329.

Following the hearing, the Court issued its Memorandum Opinion and Order concluding that Gonzalez's 2009 Trafficking Conviction was not a "serious drug offense" under the ACCA.[4]

---

[3] Gonzalez was indicted in state court for two separate purse snatchings in 2004. Doc. 305-1 at 1; Doc. 305-3 at 1. He pled guilty to both charges in 2005. Doc. 305-4.

[4] For Gonzalez to have faced ten or more years of imprisonment for the 2009 Trafficking Conviction, an enhancement must have applied to his sentence. *See United States v. Romero-León*, 622 F. App'x 712, 716-17 (10th Cir. 2015) (discussing the limited discretion a New Mexico state judge has to alter a basic sentence upward without the State affirmatively seeking those enhancements on grounds of aggravating circumstances (citing *State v. Frawley*, 2007-NMSC-057, ¶ 22, 143 N.M. 7, 172 P.3d 144), *superseded by statute*, 2009 N.M. Laws, ch. 163, § 1 (codified as amended at NMSA 1978, § 31-18-15.1) (2009)); 18 U.S.C. § 924(e)(2)(A) (defining 'serious drug offense'). Without an enhancement, Gonzalez would have faced the basic sentence of nine years. *Compare* Doc. 305-8 at 2 (outlining the basic sentence for trafficking a controlled substance with intent to distribute (nine years) and possession of a controlled substance (eighteen months), *with id.* at 3 ("Any basic sentence for a felony may be altered up to one third for aggravating or mitigating circumstances."); *see also* Doc. 305-10 at 2 (recording a nine-year sentence in state custody for the 2009 Trafficking Conviction); *Frawley*, 2007-NMSC-057, ¶ 22. In New Mexico, a state district attorney must "file an information charging that person as a habitual offender" before a judge can impose a habitual offender enhancement. NMSA 1978, § 31-18-19 (1977); *Frawley*, 2007-NMSC-057, at ¶ 22; *Romero-León*, 622 F. App'x at 717; *see also* Doc. 367

Doc. 357 at 5-8. The Court's underlying reasoning stemmed from the state prosecutor's decision not to seek a habitual offender enhancement for that crime. *Id.* at 6-8. The Court concluded the habitual offender enhancement was neither sought nor imposed for the 2009 Trafficking Conviction because the state prosecutor did not file the mandatory information regarding the enhancement. *Id.* at 6. The 2009 Trafficking Conviction was insufficient to trigger the ACCA's harsher sentencing provisions. *Id.* (discussing NMSA 1978, § 31-18-15 (2024) and § 31-18-17(B) (2003)). Consequently, the Court sustained Gonzalez's objection. *Id.* at 8.

The Court also addressed Gonzalez's argument that his two prior robbery convictions did not qualify as predicate ACCA offenses. His position, if accepted, would necessarily require a finding that Tenth Circuit decisional authority was no longer binding—i.e. that it had been implicitly overruled by other opinions. Unwilling to take that leap, the Court ultimately ruled that Gonzalez's robbery convictions constituted violent felonies under the ACCA. *Id.* at 8-10 (discussing the application of *United States v. Garcia*, 877 F.3d 944 (10th Cir. 2017)). That holding did not impact the result, however, because the Court held that Gonzalez's 2009 Trafficking Conviction did not qualify as an ACCA predicate offense. *Id.* at 10.

Following the Court's decision, the United States filed a motion to reconsider on July 23, 2025. Doc. 367. The Government asserted that the supplemental informations filed by state prosecutors in 2009 and later in 2013 demonstrated the habitual offender enhancement applied to the 2009 Trafficking Conviction. *Id.* at 2-8. Gonzalez contended that the United States failed to

---

at 3. The issue before the Court in every previous motion was whether the state prosecutors filed the requisite information in order for the habitual offender enhancement to apply to Gonzalez's 2009 Trafficking Conviction. *See* Doc. 329 at 1- 5; Doc. 357 at 5-8; Doc. 367 at 2-8; Doc. 369 at 1-4; Doc. 383 at 8-15.

meet its burden in demonstrating Gonzalez faced a habitual offender enhancement for the 2009 Trafficking Conviction. Doc. 369.

After thoroughly reviewing the arguments and records from the 2009 case, the Court found that Gonzalez's record of conviction established he was timely charged with the habitual offender enhancement. Doc. 383 at 8-15. Specifically, the Court concluded that the 2013 Supplemental Information was timely filed because New Mexico state law permits "prosecutors to file an information requesting the habitual offender enhancement 'at any time following conviction, as long as the sentence enhancement is imposed before the defendant finishes serving the term of incarceration and any parole or probation that may follow that term.'" *Id.* at 12 (quoting *State v. Trujillo*, 2007-NMSC-017, ¶ 10, 141 N.M. 451, 157 P.3d 16). Since the 2013 Supplemental Information "plainly supplements the Information originally filed in 2009 for the 2009 Trafficking Conviction[,]" it could be "relied upon as it is part of the charge Gonzalez pled guilty to on June 18, 2009." *Id.* at 13-14 (citing Doc. 347-1 at 4-5; Doc. 329-1; Doc. 305-8 at 2-3; *State v. Harris*, 1984-NMCA-003, ¶ 11, 101 N.M. 12, 677 P.2d 625 (finding a supplemental information which alleged the defendant was a habitual offender without charging a separate crime was a valid charge)). Therefore, "once the state prosecutor filed the 2013 Supplemental Information and charged Gonzalez as a habitual offender, the state court was obligated to impose the enhancement." *Id.* at 14 (footnote omitted) (citing *Trujillo*, 2007-NMSC-017 at ¶ 10; NMSA 1978, § 31-18-20(C)). The Court therefore overruled Gonzalez's objection that his 2009 Trafficking Conviction was not a predicate ACCA offense and concluded that the ACCA applied in determining Gonzalez's sentence. *Id.* at 15.[5]

---

[5] The Court issued a separate Memorandum Opinion and Order addressing the parties' additional sentencing objections on April 8, 2026. Doc. 390.

Gonzalez now asks the Court to reconsider its prior determination that the ACCA applies to his sentence. Doc. 392. He contends that reliance on the 2013 Supplemental Information is improper, characterizing it as an "illegal state enhancement to turn a sentencing maximum to a minimum." *Id.* at 3; *see also* Doc. 400 at 2-5. The United States opposes Gonzalez's motion asserting that he has not met the standard for a motion to reconsider and that the Court's prior ruling regarding the application of the ACCA to Gonzalez's sentence should stand. Doc. 395. The Court agrees that Gonzalez has not established proper grounds warranting reconsideration.

## DISCUSSION

### I. Motions to Reconsider

Motions to reconsider are permissible in the criminal context even though the Federal Rules of Criminal Procedure do not specifically authorize them. *See United States v. Randall*, 666 F.3d 1238, 1241 (10th Cir. 2011) (citing *United States v. Rollins*, 607 F.3d 500, 502 (7th Cir. 2010)). This dispensation recognizes that "a district court should have the opportunity to correct alleged errors in its dispositions." *United States v. Christy*, 739 F.3d 534, 539 (10th Cir. 2014) (citing *United States v. Dieter*, 429 U.S. 6, 8 (1976)). Though permissible, such motions should not be filed merely "to revisit issues already addressed or advance arguments that could have been raised earlier." *Id.* A motion to reconsider is appropriate in those limited instances when the court has misapprehended the facts, a party's position, or the law. *Servants of Paraclete v. Does*, 204 F.3d 1005, 1012 (10th Cir. 2000). "Specific grounds include: (1) an intervening change in the controlling law, (2) new evidence previously unavailable, and (3) the need to correct clear error or prevent manifest injustice." *Christy*, 739 F.3d at 539 (internal quotation marks omitted) (quoting *Servants of Paraclete*, 204 F.3d at 1012).

### II. Gonzalez Has Not Established Grounds for Reconsideration

Gonzalez argues that his Motion to Reconsider is proper because he "has presented new legal and factual authority, including precedents that were not yet existent during prior briefing or the hearing on these issues." Doc. 400 at 2 (emphasis omitted). The record does not support that assertion.

First, Gonzalez does not offer any new factual information concerning his 2009 Trafficking Conviction. He does not submit additional affidavits or new records regarding his 2013 probation revocation and the application of the habitual offender enhancement in that state proceeding. *See* Docs. 392, 400. Instead, he relies on the same 2013 Supplemental Information the Court previously considered in finding that the habitual offender enhancement applied to his trafficking conviction. *Compare* Doc. 392 at 4 (citing Doc. 347-1 at 4), *with* Doc. 383 at 4-5, 11-15 (the Court's prior Order already relying on Doc. 347-1 at 4-5 to determine whether the enhancement applies). So, there's no new evidence for the Court to consider.

Second, Gonzalez has not identified an intervening change in controlling law. Gonzalez relies primarily on *State v. Flores* in support of his request. A-1-CA-41905, 2025 WL 3516144 (N.M. Ct. App. Dec. 8, 2025) (nonprecedential); *see also* Docs. 392, 400. But the decision does not change the statutory requirements for applying the habitual offender enhancement nor does it announce a new rule of law that necessitates the Court's reconsideration of its prior ruling.[6] *See Flores,* 2025 WL 3516144; NMSA 1978, §§ 31-18-17 to -20 (1977 as amended through 2003); Rule 12-405(a) NMRA; Docs. 392, 400. Rather, the New Mexico Court of Appeals found problematic two issues arising during the defendant's sentencing. First, the district court imposed

---

[6] In his Reply, for the first time, Gonzalez cites *State v. Booth*, 2026-NMCA-062, 590 P.3d 497. Doc. 400 at 6-7. He fails to demonstrate how this recent New Mexico Court of Appeals decision is binding authority or supports his request for reconsideration. *See id.*

a habitual offender enhancement before the State filed a supplemental information, which was error given that the State later conceded that the underlying convictions could not support the enhancement. 2025 WL 3516144, at *2. Second, the district court also failed to advise the defendant of the habitual offender charge and his statutory right to contest its truth. *Id.* at *3. Nothing in *Flores* alters the law underlying this Court's prior conclusion.[7]

The timing of Gonzalez's motion further undermines his position. Although *Flores* was decided five days after the Court issued its decision on the Government's Motion to Reconsider, Gonzalez, however, waited over six months to address the decision—and only two weeks before his June 24, 2026, sentencing hearing.[8] *See* Docs. 383, 391-92. He offers no explanation for that substantial delay, which has resulted in a further delay to his sentencing. *See* Doc. 399 (resetting sentencing hearing to September 1, 2026); *cf.* Doc. 397-98 (requesting an extension to file a reply in support of his Motion to Reconsider).

The remainder of Gonzalez's Motion to Reconsider either raises arguments that could have been timely presented or are mere restatements of arguments this Court has already rejected. For example, in his prior briefing, Gonzalez argued that the habitual offender enhancement did not apply to his 2009 Trafficking Conviction because the state failed to file a supplemental information that complied with § 31-18-19; and that the 2013 Supplemental Information should be disregarded because it is not a *Shephard* charging document. Doc. 329 at 1-5; Doc. 369 at 1-4. He now contends that the 2013 Supplemental Information was untimely because it was filed in open court thirty-

[7] Moreover, *Flores* is an unpublished decision. *See* Rule 12-405(A) NMRA.

[8] In comparison, the Government filed its Motion to Reconsider within thirty days of the Court's initial Memorandum Opinion and Order regarding the ACCA Enhancement. *See* Docs. 357, 367. The Government's Motion to Reconsider also requested the Court to reevaluate its initial opinion in order to correct clear error. *See* Doc. 367 at 2 (citing *Christy*, 739 F.3d at 539).

seven minutes after the probation revocation hearing began. Doc. 392 at 4; Doc. 400 at 5. He further asserts the Government has not demonstrated that the May 28, 2013, revocation hearing complied with all of the statutory provisions set forth in NMSA 1978, § 31-18-20(A). Doc. 392 at 2. Those arguments depend on facts and legal theories that had already been available to Gonzalez during prior briefing. They could have (and should have) been raised then and do not provide a proper basis for reconsideration now. *See Christy*, 739 F.3d at 539.

Gonzales also renews his claim that the Government cannot establish with "certainty"—as required by *Taylor v. United States*, 495 U.S. 575 (1990)—that Gonzalez's drug trafficking conviction is a "serious drug offense" for ACCA purposes. *Compare* Doc. 329 at 9, *and* Doc. 369 at 4, *with* Doc. 400 at 4.[9] He likewise argues again that the 2013 Supplemental Information is not a *Shepard* document that can be relied upon for ACCA purposes. *Compare* Doc. 329 at 5, *and* Doc. 369 at 2, *with* Doc. 400 at 5-8. The Court has previously addressed and rejected both arguments. *See* Doc. 383 at 11-12 & nn.10-11.

At some point, the briefing regarding the application of the ACCA must come to end and the case must proceed. That time is now. Gonzalez has identified no new evidence, no intervening change in controlling law, or other basis to "correct clear error or prevent manifest injustice." *Christy*, 739 F.3d at 539 (internal quotation marks omitted) (quoting *Servants of Paraclete*, 204

---

[9] The Court previously noted that the Tenth Circuit has not applied (nor even mentioned) the *Taylor* certainty test when determining whether offenses are "serious drug offenses" under the ACCA. Doc. 383 at 11 n.10. Additionally, the two Tenth Circuit cases Gonzalez relies upon in his Motion to Reconsider are instances where the Tenth Circuit was determining whether a prior conviction was a "violent felony" under the ACCA—not a "serious drug offense." *See* Doc. 400 at 4-5 (citing *United States v. Degeare*, 884 F.3d 1241 (10th Cir. 2018); *United States v. Titties*, 852 F.3d 1257 (10th Cir. 2017)); *see generally Degeare*, 884 F.3d 1241, 1245 (reviewing whether forcible sodomy constitutes a ACCA predicate crime); *Titties*, 852 F.3d at 1265 (noting the defendant was "subject to the ACCA's 15–year mandatory minimum only if his 1996 Oklahoma conviction for feloniously pointing a firearm under § 1289.16 qualifies as a violent felony.").

F.3d at 1012); *see also* Docs. 392, 400. Instead, his motion raises arguments that this Court has already considered and rejected. Those are not proper grounds for reconsideration. *See Christy*, 739 F.3d at 539. Gonzalez's motion is denied.

**CONCLUSION**

For the reasons explained above, the Court denies Defendant Erminio Gonzalez's Motion to Reconsider, Doc. 392. Gonzalez's sentencing hearing shall proceed as scheduled for September 2, 2026.

It is so ordered.

UNITED STATES DISTRICT JUDGE
MATTHEW L. GARCIA